IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANOTO AB, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 03 C 4723 |
| v. | ) |
| | ) |
| ORAL F. SEKENDUR, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

Before this court is plaintiff Anoto's AB ("Anoto") Motion for Attorney's Fees under 35 U.S.C. § 285. (Dkt. No. 139.) Anoto, the prevailing party in this action, asks that *pro se* defendant Oral F. Sekendur ("Sekendur") pay Anoto's reasonable attorney's fees in this action. For the following reasons, and within the scope as explained below, the motion is granted.

## BACKGROUND

This case arises out of a four-count complaint filed by Anoto on July 8, 2003 against Sekendur. The complaint alleged tortious interference with existing and prospective business relationships in Count I and Lanham Act violations in Count II. Count III of the complaint requested a declaratory judgment that neither Anoto nor its licensed manufacturer have ever directly, contributorily, by inducement, or otherwise, infringed Sekendur's U.S. Patent No. 5,852,434 ("'434 patent") and that Sekendur's '434 patent be declared invalid for failure to

1

comply with one or more federal laws or regulations. Finally, Count IV of Anoto's complaint requested a declaratory judgment that the '434 patent be declared invalid based on Sekendur's misuse of the patent. On July 23, 2003, Sekendur filed an answer and counterclaim. Sekendur alleged in his counterclaim that Anoto and six other entities infringed Sekendur's 434 patent.

Count III of the complaint was resolved by summary judgment on October 22, 2004, (Dkt Nos. 133, 136) with this court granting Anoto's Motion for Summary Judgment of Noninfringement (Dkt. No. 75) and Anoto's Motion for Summary Judgment of Invalidity for Lack of Enablement (Dkt. No. 104). That summary judgment ruling also resolved Sekendur's counterclaim of infringement (Dkt. No. 32).

## ANALYSIS

"The court in exceptional cases may award reasonable attorney fees to the prevailing party." 29 U.S.C. § 285. "Among the types of conduct which can form a basis for finding a case exceptional are . . . vexatious or unjustified litigation, and frivolous suit." *Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1551 (Fed. Cir. 1989) (citations omitted).

The standards of Federal Rule of Civil Procedure 11 can enlighten the determination of whether vexatious litigation has occurred. In upholding a finding of vexatious litigation, the Federal Circuit has explained:

> Where, as here, the patentee is manifestly unreasonable in assessing infringement, while continuing to assert infringement in court, an inference is proper of bad faith, whether grounded in or denominated wrongful intent, recklessness, or gross negligence. The alternative, abuse of the courts through manifestly unreasonable lawsuits based on uninvestigated allegations, would constitute a blot on the escutcheon of the law and a violation of Rule 11, Fed.R.Civ.P.

*Eltech Systems Corp. v. PPG Indus.*, 903 F.2d 805, 811 (Fed. Cir. 1990). In the context of Rule

11, the Federal Circuit has made clear what constitutes a "reasonable investigation" prior to filing a counterclaim of infringement. *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 986-67 (Fed. Cir. 2000). In *View Engineering*, the Federal Circuit found sanctionable conduct when the counterclaims were based "solely on [the inventor's] 'belief . . . based on [his] knowledge of the [patents in suit, the accused infringer's] own advertising and its claims to customers as to what its machines did, and [his] knowledge and understanding of the technology required [in the field.]" *Id.* at 985-86. As the Federal Circuit explained, at a minimum, the party filing a counterclaim must undertake an infringement analysis "applying the claims of each and every patent that is being brought into the lawsuit to an accused device and conclud[ing] that there is a reasonable basis for a finding of infringement." *Id. at 986.*

Sekendur has engaged in a "vexatious litigation strategy and other misconduct." *Beckman Instruments*, 892 F.2d at 1553. The court highlights below some of Sekendur's most egregious conduct, which, as Anoto has argued, can be summarized as (1) a lack of pre-suit investigation before filing a counterclaim, (2) an abuse of baselessly naming third parties in the counterclaim, (3) misrepresentations to this court, and (4) the filing of frivolous motions.

Prior to the filing of Anoto's complaint on July 8, 2003, and no later than January of 2001 the parties were involved in some type of negotiations over the '434 patent. (Mot. Ex. 6.) The negotiations, however, were not successful. By the end of 2002 and the beginning of 2003 Sekendur was making veiled and explicit threats of litigation against both Anoto, and other companies based upon those companies business relationships with Anoto. For example, Sekendur sent out form e-mails to numerous corporations informing them that "the Anoto web site indicates that your company may have partnered with Anoto," and, that in Sekendur's

opinion, "there may be a patent infringement issue with regard to your participation in this project" because Sekendur was the owner of the relevant "intellectual property." (Mot. Ex. 6.) These e-mails ended with the following warning: "Please contact me should you wish to discuss this matter and to avoid the expense of lengthy litigation." (Mot. Ex. 6.) Sekendur's threats were not always so veiled. At least twice, Sekendur directly threatened Anoto with litigation by e-mailing the following to Anoto: "[o]n Friday, November 22, 2002, I will be filing an infringement suit in Federal Court," (Dkt. No. 22); "[o]n or about March 1, 2003, I intend to take legal action against Anoto and all its partners for patent infringement," (*Id.*) Continuing his threats of litigation, Sekendur sent an offer for a licensing agreement to an executive at Anoto warning that Anoto's "project may not survive the cost of litigation" if Sekendur's terms for a license were not met. (Mot. Ex. 7.)

This conduct is exactly the type of conduct that the Declaratory Judgment Act exists to remedy. As the Federal Circuit explained:

> This [case] presents a type of the sad and saddening scenario that led to the enactment of the Declaratory Judgment Act (Act), 28 U.S.C. § 2201. In the patent version of that scenario, a patent owner engages in a *danse macabre*, brandishing a Damoclean threat with a sheathed sword. Guerilla-like, the patent owner attempts extrajudicial patent enforcement with scare-the-customer-and-run tactics that infect the competitive environment of the business community with uncertainty and insecurity. Before the Act, competitors victimized by that tactic were rendered helpless and immobile so long as the patent owner refused to grasp the nettle and sue. After the Act, those competitors were no longer restricted to an *in terrorem* choice between the incurrence of a growing potential liability for patent infringement and abandonment of their enterprises; they could clear the air by suing for a judgment that would settle the conflict of interests.

*Arrowhead Indus. Water Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 734-35 (Fed. Cir. 1988). Faced with the "*in terrorem* choice between the incurrence of a growing liability for patent

4

infringement and abandonment of [its] enterprises" (*Id.*), Anoto began this lawsuit on July 8, 2003, seeking in part a declaratory judgment of non-infringement.

On July 23, 2003, Sekendur filed a counterclaim for infringement. The counterclaim was one for infringement, pled not only against Anoto, but also against six new companies Sekendur sought to add to this litigation. Two aspects of this counterclaim support a finding of vexatious litigation. First, as Anoto has explained in detail in their memoranda before this court, Sekendur performed no reasonable inquiry regarding infringement. During his own deposition testimony, Sekendur confirmed that he never used, tested, or even plugged in any product that he accused of infringement, even though Anoto provide him with sample pen and paper products. (Mot. Ex. 1 at 620-22.) Sekendur also confirmed that even if he had tested the relevant products that he was "*not qualified to determine infringement.*" (*Id.* at 218-19)(emphasis added). Even as the case progressed, Sekendur, proceeding in this action *pro se*, was still without any reasonable basis to determine infringement, as his own deposition testimony confirms:

> Q. Do you believe Anoto is infringing the '434 patent today?
>
> A. You know, I am not qualified to answer that. I'm not an attorney.

(*Id.* at 793.) In response to the pending motion, Sekendur now attempts to backpedal on his previous sworn deposition testimony by stating that he is a "competent inventor and is capable of understanding how Anoto technology works by taking apart and examining the Anoto device and the code." (Resp. at 12.) Sekendur also argues that he performed such inquiry with his expert, Oguz Alpoge ("Alpoge"), but the only support Sekendur cites to contradict his previously sworn deposition testimony are reports from Alpoge created after Sekendur filed his counterclaim. None of this evidence is relevant to whether Sekendur, at the time he filed his counterclaim, had

5

performed a reasonable infringement inquiry. *See e.g. Judin v. United States.*, 110 F.3d 780, 785 (Fed. Cir. 1997) ("Because Rule 11 is not about after-the-fact investigation, Judin and Van Der Wall's violation of Rule 11 was not cured by the fact that, after filing the complaint, Judin consulted with an expert and was able to make 'colorable' arguments in response to a motion for summary judgment.").

Sekendur in fact, admits, in his response to the pending motion, that he filed his "counterclaim without an extensive pre-suit investigation." (Resp. at 1-2.) He goes on to argue that the lack of extensive investigation was warranted by the time constraints of filing a counterclaim. Sekendur cites no law for the assertion that a time constraint relieves a party of the need to perform a reasonable inquiry into whether there is a basis for a counterclaim, but, just as importantly, Sekendur misstates the factual circumstances. Sekendur filed his counterclaim *before* he was served with Anoto's declaratory judgment complaint, and, therefore, before he was under any time constraint to file a counterclaim. As Anoto establishes, it sent Sekendur a courtesy copy of its Complaint along with a letter expressing Anoto's preference not to serve the Complaint until the parties met to discuss settlement. (Reply, Ex. 22.) Sekendur rebuffed the opportunity to discuss settlement, instead opting to file a counterclaim for which he can provide no evidence of a reasonable infringement inquiry.

The second aspect of the counterclaim that supports a finding of vexatious litigation is that Sekendur added numerous defendants. With the counterclaim, Sekendur pled claims not only against Anoto, but also against six other defendants, all of whom Sekendur alleged were "infringing and have infringed, and contributed to and induced infringement of, one or more

6

claims of the '434 patent." (Dkt. No. 3 ¶ 14.)[1] Many of these newly added defendants were the same companies that Sekendur had previously accused of infringement via e-mail because of their business dealings with Anoto. Sekendur attempts to defend bringing his counterclaim against the other entities on the basis that he never served them, and instead just opted to send them a letter notifying them of the lawsuit (Resp. 15). What Sekendur fails to understand is that a "scare-the-customer-and-run-tactic," *Arrowhead Indus.*, 846 F.2d at 734-35, is not a substitute for the reasonable inquiry required by Rule 11. Filing baseless counterclaims against numerous parties is vexatious conduct that not only burdens the parties with unnecessary costs, but also burdens this court. The time this court spent ruling on the motions to dismiss engendered by Sekendur's baseless counterclaim against numerous defendants, (Dkt. Nos. 11, 12, 15, 19, 20, 34, 35, 36, 39, 40), was time this court could have devoted to other parties and litigants this court endeavors to serve. Furthermore, Sekendur's no-harm-no-foul argument that he never actually served nor intended to serve the additional defendants is belied by his own actions. Sekendur, in fact, actively opposed dismissal of the additional defendants in not only a motion (Dkt. No. 14), but also in a motion to vacate filed after this court had already rule (Dkt. No. 23).

After it was clear which parties were involved, Sekendur's vexatious litigation conduct continued. Throughout this litigation, Sekendur has made numerous misrepresentations to this court.[2] When he initially moved to dismiss Anoto's Complaint, Sekendur argued that Anoto had

---

[1] Sekendur later amended his counterclaim to include a total of thirteen defendants. (Dkt. No. 32.)

[2] Sekendur's litigation conduct has caused another judge in this district to question his veracity. In Case No. 04 C 5029, Judge Moran dismissed an appeal of Sekendur's from an adverse determination in bankruptcy court under 28 U.S.C. § 1915(e)(2)(A) by ruling that Sekendur had made false allegations of poverty in his request to proceed in forma pauperis on

no "apprehension of litigation" (Dkt. No. 10 ¶ 37) despite the fact that, as this court later discovered, Sekendur had explicitly threatened to sue Anoto. Admittedly, Sekendur based his contention of no apprehension on Sekendur's misunderstanding of Anoto's standing to sue in the United States, but, nevertheless, it is impossible to reconcile Sekendur's direct threats of suit against Anoto with his later argument to this court that Anoto could not be sued.

At a hearing on June 15, 2004, this court was made aware that Sekendur had recently filed for bankruptcy.[3] This court pointedly questioned Sekendur about his motives for filing bankruptcy:

> THE COURT: All right. Are you trying to avoid this further litigation?
>
> MR. SEKENDUR: This litigation?
>
> THE COURT: Yes.

---

appeal. As Judge Moran stated, Sekendur's track record in the Northern District of Illinois "show[s] [Sekendur's] proclivity for less than full disclosure on court documents that require full disclosure, such as the financial affidavit in this case." *In re: Sekendur*, Case No. 04 C 5029, Dkt. No. 10 at 2.

[3] As Anoto has argued, there is substantial support for its position that Sekendur has filed bankruptcy in an attempt to forestall judicial action. In Case No. 00 C 7054, before Judge Leinenweber, a judgment was entered against Sekendur. That judgment was not easily obtained, and, on January 15, 2004, Judge Leinenweber issued a bench warrant for Sekendur for his failure to pay the judgment. (Case No. 00 C 7054, Dkt. No. 84.) Days later, on January 20, 2004 Sekendur filed his first bankruptcy. After two more filings, and all filings being dismissed, Sekendur is now permanently barred from filing new bankruptcy petitions without express leave from the bankruptcy court. ( Case No. 05 B 739, Dkt. No. 33.) Sekendur's attempts to portray himself as "indigent" are also questionable, at least until he ceases to evade inquiry into the extent of his assets. As this court has explained in the other case over which this court presides involving Sekendur, Case No. 03 C 807, Sekendur has repeatedly requested *in forma pauperis* status in the Northern District of Illinois. These requests have been denied because Sekendur refuses to provide this court with information as to assets controlled by his wife, even though it is undisputed that she has previously provided him with "loans" to fund the various cases in which he has been involved in the Northern District of Illinois. (Case No. 03 C 807, Dkt. No. 52.)

> MR. SEKENDUR: No, Your Honor. I wasn't even aware that –
>
> THE COURT: Well, why don't you tell –
>
> MR. SEKENDUR: – you would even stay this
>
> THE COURT: – the bankruptcy court that you want to proceed with this litigation?
>
> MR SEKENDUR: I do. Yes, your Honor. I do want to proceed.

(Mot. Ex. 9 at 20.) This oral representation to this court is difficult to reconcile with Sekendur's later written submissions to this court. Two weeks after the June 15 hearing quoted above, Sekendur blatantly contradicted himself when seeking a modification of the scheduling order in this case. (Dkt. No. 73.) Sekendur represented:

> 5. Pursuant to Title 11 USC section 362, this litigation was automatically stayed for 40 days between May 13 and June 22, 2004.
>
> 6. Sekendur notified his technical expert, Mr. Alpoge, of the automatic stay. In response, Mr. Alpoge stopped working on his expert report and filled his schedule with other matters. Now, Mr. Alpoge needs more time to complete his expert report.

(Dkt. No. 73.) Sekendur's protestations to this court on June 15, 2004 that he was unaware of an automatic stay are directly contradicted by his later written submission that he had previously notified his expert of the automatic stay.

Sekendur also misrepresented his *pro se* status to this court. Sekendur has portrayed himself as *pro se* throughout this litigation. Nevertheless, Anoto brought to this court's attention that Sekendur was actually receiving the services of an attorney, Mr. Alan McGrath ("McGrath"). (Ct. Dkt. No. 68.) Sekendur's attempt to defend his misrepresentations about his *pro se* status only entangled him in more misrepresentations. In his response memorandum to Anoto's Motion

9

for Attorney's Fees, Sekendur states that McGrath's involvement in this case was solely limited to a Motion for Preliminary Injunction, which this court struck (Ct. Dkt. No. 68.) However, as Anoto points out, McGrath is on record contradicting that statement. McGrath had assisted Sekendur in Sekendur's appeal in the Federal Circuit. On March 4, 2004 McGrath filed a petition with the Federal Circuit to withdraw as Sekendur's attorney where McGrath stated that he worked for Sekendur for the past "18 months." (Reply, Ex. 27 at 3.) Furthermore, as Sekendur's sworn deposition testimony establishes, McGrath has assisted Sekendur throughout this litigation. (Mot., Ex. 1 at 169-71, 311-25, 389-90.)

Finally, this court has been inundated with various frivolous motions to rejoin dismissed parties, motions to vacate and reconsider, and motions to amend or supplement previously made filings. These motions not only burden the parties to this litigation, but also burden this court. (*See e.g.* Dkt. Nos. 24, 45, 48, 51, 67, 81, 151, 156.)

## CONCLUSION[4]

The full record of this case, briefly summarized above, supports a finding that Sekendur has engaged in a "vexatious litigation strategy and other misconduct." *Beckman Instruments*, 892 F.2d at 1553. As such, "[t]o require [Anoto] to pay its attorneys to defend against [Sekendur's] vexatious litigation strategy and misconduct would be a gross injustice." *Id.* "However, that can be avoided by awarding [Anoto] the portion of its attorneys fees which related to the vexatious litigation strategy and other misconduct." *Id.*

Thus, Anoto is entitled to a reimbursement of its expenses incurred as a result of Sekendur's vexatious litigation. Anoto must, however, limit its fee request to those fees that were incurred as a result of Sekendur's vexatious litigation strategy, which include any fees incurred or that will be incurred in the future in support of the pending request for a fee award. This court will not allow Anoto to recover all of the fees it incurred in this action.

The parties are ordered to comply with N. D. Ill. Local Rule 54.3, which sets out a procedure designed to encourage agreement on an award of attorney's fees. Some portions of that rule, such as the portion requiring the respondent, in this case Sekendur, to provide the total amount of attorney's fees paid, may not be relevant to this case. The parties are, nevertheless, ordered to comply with that rule in good faith in order to attempt to come up with an agreement

---

[4] Sekendur's Motion to Dismiss Case and Vacate all Court Orders (Dkt. No. 161) is also denied. Sekendur's promise not to sue pending the outcome of a reissue application did not divest this court of jurisdiction. First, Sekendur never actually subjected the '434 patent to reissuance. Second, even if he did, Sekendur's promise not to sue until reissuance was complete is not the type of promise that would leave Sekendur forever estopped from asserting that any current or previous activity by Anoto constitutes infringement. *See Fina Research, S.A. v. Baroid Ltd.*, 141 F.3d 1479, 1482-83 (Fed. Cir. 1998); *Super Sack Mfg. v. Chase Packaging Corp.*, 57 F.3d 1054, 1058-60 (Fed. Cir. 1995); *Spectronics Corp. v. H.B. Fuller Co.*, 940 F.2d 631, 636-38 (Fed. Cir. 1991).

as to fees, and, in the event no agreement is reached, to at least provide this court with an efficient process by which to decide the ultimate amount of fees awarded. The date of "judgment or settlement agreement" referred to in that rule that triggers the parties' respective obligations is the date this order is entered. If no agreement is reached, the fee motion and joint statement called for in 54.3(e) shall be filed no later than November 4, 2005. Any response is to be filed no later than December 2, 2005 and any reply shall be filed by December 16, 2005.

ENTER:

JAMES F. HOLDERMAN
United States District Judge

DATE: August 22, 2005